LEE v. STRATFORD ARMS HOTEL CO.

1. CANCELLATION OF INSTRUMENTS—CONTRACTS—FRAUD.
   In a suit to set aside certain contracts for the financing and construction of a hotel building on the ground of fraud, evidence *held*, insufficient to establish fraud.[1]

2. APPEAL AND ERROR—PART OF DECREE UNAPPEALED FROM AFFIRMED.
   On appeal by plaintiff from a decree in the court below, that part of the decree favorable to plaintiff, unappealed from by defendant, is affirmed.[2]

Appeal from Wayne; Collins (Joseph H.), J., presiding. Submitted July 22, 1926. (Docket No. 110.) Decided December 8, 1926.

[1]Cancellation of Instruments, 9 C. J. § 195; [2]Appeal and Error, 4 C. J. § 2603.

Bill by Arthur V. Lee against the Stratford Arms Hotel Company, the Otto Misch Company and others to set aside certain contracts on the ground of fraud. From a decree for defendants, plaintiff appeals. Affirmed.

*Routier, Nichols & Fildew,* for plaintiff.

*Harold A. Sleeper* (*Maloney & Wing,* of counsel), for defendants.

*Monaghan, Crowley, Reilley & Kellogg,* for defendant Otto Misch Co.

WIEST, J.   This case involves the validity of several contracts signed by plaintiff in and about the financing and construction of the Stratford Arms hotel in the city of Detroit.   Plaintiff is 68 years of age, an attorney of 40 years' standing, but since 1911 engaged in the real estate business in the city of Detroit.   In March, 1923, he conceived the idea that an apartment hotel at the southeast corner of Park boulevard and Sproat street in the city of Detroit would prove a good investment, and figured the cost of an eight-story building at about $400,000.   With this in mind he made an offer to Jennie H. Marwell, owner, to take a 99-year lease of the premises (125 by 60 feet) at the point mentioned and stated the probable cost of an eight-story hotel at about $400,000, and gave his estimate of returns on such an investment.   April 2, 1923, the owner gave plaintiff a 99-year lease of the premises, exacting therein monthly payments of ground rent, and agreeing to join in a first mortgage to raise money for construction purposes.   Plaintiff had no means of his own with which to build the hotel or materially aid in the necessary financing of the project and even had to borrow money to pay some installments of ground rent.   The lease was of value if the scheme plaintiff had in mind worked out success-

fully, otherwise, and without great expenditure, it was a serious liability. The inability of plaintiff to finance the project necessarily caused him to endeavor to induce others to become interested, and this led to the making of several contracts, now claimed by him to be void for fraud.

The first step, of course, was to have some plan of the contemplated building prepared, and to this end Louis Kamper, an architect, was employed under the standard form of contract. Plans were prepared by the architect. July 5, 1923, plaintiff entered into a construction contract with the Otto Misch Company, under which he agreed to pay $290,000 for a seven-story building erected according to the plans and specifications of the architect. Financial arrangements at that time had not been perfected but a tentative method by mortgage bonds, from which $225,000 was to be realized, was mentioned. There is a claim made by plaintiff of a previous contract between the same parties for a lesser sum, and that plaintiff was induced, by representations made by Paul L. Kamper, son of Louis Kamper, to forego that contract. The evidence in support of such claim is too unsatisfactory to justify such a finding. October 31, 1923, plaintiff, by agreement with Howe, Snow & Bertles, Inc., arranged for the sale of bonds secured by trust mortgage covering the fee interest of Jennie H. Marwell and plaintiff's leasehold interest in the sum of $250,000. In the agreement plaintiff declared his intention to form a corporation to which the lease would be assigned and it would carry out the agreement. October 15, 1923, plaintiff entered into a contract with the Lynch Construction Company, a New York corporation doing business in this State, for the construction of the building and the financing of the project beyond the avails from the above mentioned bonds. To this end a local corporation was to be created by and under the control of the contractor,

to which plaintiff would assign his lease, and the new corporation would enter into contract with the Lynch Company for the construction of the building on the basis of 10 per cent. of costs as a contractor's fee. This is the so-called cost-plus contract. The contract also provided for a lease by the new corporation to plaintiff upon completion of the building. October 31, 1923, plaintiff entered into a supplemental agreement with the Lynch Construction Company, modifying the former agreement so that the Lynch Company should be paid the cost of construction of said apartment hotel, plus financing charges, payment of arrears of taxes, assessed taxes during construction, one year's interest on first mortgage, bond discount, arrears of rent, and rent for one year in advance from November 1, 1923, trustee's fees, obligation of $550 to Henry J. Guthard, mortgage and stamp taxes, recording charges, Michigan securities commission fee, company attorney's fees, and insurance, and, for its services in financing, the sum of $350,000, plus $35,000 for service under the previous contract, and fees of the architect were fixed at $21,000. November 3, 1923, articles were executed for the incorporation of the Stratford Arms Hotel Company with Paul L. Kamper, son of the architect, president and holder of nearly all the shares of stock. This corporation was organized in accordance with the previous agreement with plaintiff, and he knew it was to serve as the creature of the construction company. November 24, 1923, plaintiff and his wife assigned the Marwell lease to the Stratford Arms Hotel Company. December 1, 1923, the Stratford Arms Hotel Company, together with Jennie H. Marwell, executed a first mortgage to the Detroit Trust Company as trustee to secure bonds in the sum of $250,000, to be purchased by Howe, Snow & Bertles, Inc., at 90 per cent. of their face value. In the mortgage the

Stratford Arms Hotel Company agreed to erect on the mortgaged premises a modern seven-story apartment hotel, containing not less than 520,000 cubic feet and costing not less than $360,000. The trustee under the mortgage was to pay in part for the construction from the fund under the architect's certificates. October 31, 1923, the Lynch Construction Company entered into an agreement with the Otto Misch Company, in which it was recited that the Misch Company had agreed to erect the hotel for Mr. Lee, and that at the request of the Misch Company the Lynch Company had, on October 15, 1923, entered into an agreement with Lee to finance the project beyond the avails from the proposed first mortgage. The Misch Company agreed to construct the hotel for the sum of $241,000, and to aid in the financing to execute its promissory notes to an amount not exceeding $40,000, to be paid by some form of financing after completion of the building. November 26, 1923, the Stratford Arms Hotel Company engaged the Lynch Construction Company to erect a seven-story, above basement, hotel building, to consist of 160 bed rooms, 6 sitting rooms, 84 bath rooms, with 5 stores, 1 restaurant and kitchen, the building to be 75 feet in height and furnished suitably for an apartment hotel at a guaranteed cost of $350,000, and a service fee of $35,000. The Hotel Company agreed to execute the trust mortgage for $250,000 to secure the bonds Howe, Snow & Bertles, Inc., had agreed to purchase. The Lynch Company agreed to advance the sums necessary to defray the cost in excess of the amount realized from sale of the mortgage bonds and advance 25 per cent. of the purchase price of the furniture and furnishings, pay taxes due and accruing during construction, interest for the first year on first mortgage bonds, arrears of ground rent, not exceeding $15,000 and ground rent for one year, fees of the mortgage trustee, $550 to

Henry Guthard, State tax upon the mortgage, stamp tax upon the bonds, recording charges, fee of the securities commission, fees and expenses of attorney for the Hotel Company and bond premiums; all such expenses to be a part of the construction costs and covered by the payment of $385,000. This agreement also gave the Lynch Company power to designate the directors and treasurer of the Hotel Company until the contract price for construction was paid. The Hotel Company agreed to execute a second mortgage upon request. November 26, 1923, the Stratford Arms Hotel Company entered into contract with the Lynch Construction Company and Louis Kamper. This modified the above mentioned contract in a few particulars not necessary to state.

October 31, 1923, the Lynch Construction Company and Louis Kamper signed an agreement, reciting in part:

"The parties are about to enter upon a joint venture in connection with the financing and construction of an apartment hotel. * * *

"The Otto Misch Company has agreed, in connection with its contract, to erect the apartment hotel above mentioned, to issue and deliver to the construction company its notes to an aggregate of forty thousand ($40,000) dollars, the avails thereof to be used toward financing the cost of said building in excess of the proceeds of a first mortgage loan arranged to be sold through Howe, Snow & Bertles, Inc.

"The Lynch Construction Company has agreed to indorse and procure the discount of said notes.

"Mr. Kamper agrees to pay (or at his option give his notes in convenient denomination), from time to time, to the corporation to be formed to take over the lease of said land, the amount of any additional moneys in excess of the above forty thousand ($40,000) dollars necessary to complete the said apartment hotel (including financing costs and incidentals as shown on memorandum prepared and initialed this day), as needed in the proportion which his fees as architect bear to the total of such additional amount, and the

Lynch Construction Company will likewise pay (or give its notes in convenient denomination) to the said corporation at like times and in like manner the proportion which its fees bear to said additional amount. * * *  ·

"The parties shall likewise share in like proportion any profits in the construction of said apartment hotel under the contract with Arthur V. Lee."

Paul L. Kamper agreed at the foot of this contract:

"To procure the discount, over a period of not in excess of one year from first date, of the notes of Louis Kamper and Lynch Construction Company for the aforesaid amounts."

November 26, 1923, the Stratford Arms Hotel Company agreed with plaintiff, in accordance with previous stipulations in construction and finance contracts, upon a lease and the terms thereof, of the hotel upon its completion, with right to pay for, and, upon payment, own the hotel. This agreement recited in detail several former agreements and steps taken, and plaintiff expressly acknowledged complete and satisfactory compliance by the Lynch Company of all obligations imposed upon it or the Stratford Arms Hotel Company by the contract of October 15, 1923, and that contract was canceled.

Construction work commenced December 3, 1923, by the Otto Misch Company, as subcontractor, and from time to time, as the work progressed, payments were made by the Detroit Trust Company out of the mortgage fund. During the course of construction plaintiff was on the premises nearly every day, watching the progress of the work, and knew the Otto Misch Company was doing the work. In May, 1924, it was necessary for some one to take over the Lynch Construction Company contract and finance the project and complete the building. May 28, 1924, the Stratford Arms Hotel Company, the Lynch Construction Company, Otto Misch Company, Louis Kamper and

Paul L. Kamper, agreed upon an adjustment of dealings to that date and the Lynch Construction Company assigned its construction contract to Paul L. Kamper who undertook performance and thereafter did perform.   June 18, 1924, the building was partly completed and the Stratford Arms Hotel Company agreed with plaintiff that he might take possession of such part under terms specified.   July 31, 1924, the Stratford Arms Hotel Company, by agreement with plaintiff, delivered possession to plaintiff as lessee.   The agreement is too long to be given, but therein plaintiff acknowledged the building had been fully completed in all respects as contemplated and the furnishings properly installed to his entire satisfaction, save decoration of the lobby.   Plaintiff took possession, made default, the lessor declared forfeiture and plaintiff filed the bill herein to have his contracts for construction and financing set aside for fraud, the cost of construction determined, and right to pay the same and have the building.   In the circuit the trial judge refused plaintiff relief, except as to the fee of the architect.   Plaintiff appealed.

Due consideration of this case leads us to state conclusions without quoting the evidence.   Plaintiff read every contract he signed, was able to and did comprehend the full purport of each.   In some instances he demurred but, being anxious to have the work proceed, acceded.   It was well understood by plaintiff from the beginning that the avails from the $250,000 trust mortgage would not finance the project and there would have to be subsequent financing to a considerable degree.   This is established by plaintiff's estimate of probable cost in his proposition to take a lease and by every one of his contracts executed to provide ways and means to finance the project.   But plaintiff insists that he had a contract with the Otto Misch Company to construct the building for $290,000

and, by fraud, was induced to enter into other contracts swelling the cost to $406,000, inclusive of the architect's fee. The Otto Misch Company contract called for no financing by the contractor, no furniture or furnishings, no assumption of liabilities and the carrying of the same, and no lease under which plaintiff could operate and pay for the hotel. Plaintiff forgot, until confronted with it at the hearing, that on August 25, 1923, 50 days after making the Misch Company contract, the Misch Company offered to erect, construct and fully complete the hotel for $350,000, on condition, however, that a first mortgage loan for $287,000 for construction purposes be obtained, and that plaintiff assign his lease to the Misch Company as security, and that he accepted the offer. Plaintiff's explanation of the purpose of this offer and acceptance merits scant consideration. We do not think the offer and acceptance a fake to be employed in swelling a showing of cost before the securities commission. If we believed so it would strongly militate against plaintiff's claim of fairness and asserted callowness.

Mr. Banbrook, of the Otto Misch Company, testified with reference to this contract:

"This contract was written so that it would be possible for us to put up the building, absorbing the interest on the mortgage bonds for the first year, the discount on the bonds and financing charge, and to sell it back to Mr. Lee on a five-year basis at a price of $350,000, plus any advancement we should make on taxes."

We think this is the true explanation. The $290,000 contract with the Misch Company failed for want of financing by plaintiff. The contemplated first mortgage bonds were inadequate; the contractor was under no obligation to arrange for additional finances and plaintiff was unable to do so. The contract was, therefore, abandoned as well as the accepted proposi-

tion of August 25th, for $350,000, and plaintiff entered into contract with the Lynch Construction Company. The Otto Misch Company, under contract with the Lynch Construction Company, did erect the building and received $236,325.75, and plaintiff points to this as indicative of fraud in obtaining from him a contract for $385,000 by the Lynch Company.   As we have pointed out, the Lynch contract included financing and furnishing of the hotel, carrying of obligations and long-time opportunity for plaintiff to operate the hotel under lease and pay for it.   We think plaintiff was well aware of every provision in the Lynch contracts, and was induced by financial needs and not by fraud to execute the same.   Plaintiff signed contract after contract with reference to the construction and financing of the project with full knowledge of the total cost now complained of.   He expressed his complete satisfaction in writing of everything done and accepted a lease as provided in the contracts he complains of.   In explanation of his written acceptance, at the completion of the building, plaintiff testified:

"I did sign an agreement that I accepted, but I think it would not be fair to say that I accepted it. I was in the position of a lone pedestrian at night being held up on the street, I had to do it."

We are not impressed with this.   The suggested analogy does not hold good.   It is a confession without successful avoidance; an admission of knowledge of facts, then waived to obtain possession and now asserted to retain it.   If the statements were not true then he should not have given them verity by his signature.

We have considered all the steps taken from the time the lease was procured down to the time plaintiff found the returns from the hotel, under his management, would not meet his contract obligations and pay for the hotel, and find he was quite content to

236—Mich.—34.

sign contracts in order to get the building erected and furnished but now that it is done wants a readjustment more favorable to him than his contracts provide.

After signing contracts obligating himself to pay every dollar asked for the construction and equipment of the building, except a profit to, and which the architect repudiates, plaintiff asks that such contracts be annulled and the cost be ascertained regardless of contracts, and he be permitted to pay the same and have the building. The contracts must measure the rights of the parties unless they are set aside for fraud. If plaintiff was unwise in making the contracts he must let the expense thereof stand as tuition in the school of experience. If the contracts plaintiff signed stand he is not entitled to any relief except as to the claim of the architect. We find no fraud warranting annulment of any of the contracts signed by plaintiff, or any of the contracts executed because of power conferred by contracts signed by plaintiff. If plaintiff pays $385,000 for the hotel, that being the contract price, without the architect's fee, it is of interest to note the value of the building.

Mr. Ralph Starrett of the Starrett-Dilks Company, who has been in the building business since 1892, operating in many of the large cities throughout the country, made an examination of the hotel building, prepared an estimate of the cost of the hotel, and found the actual cost, without profit, would amount to $369,973, and, adding to that the usual 7 per cent. would make it $395,871. He also testified that the price of $395,000 was obtained by actual bids of contractors put through the office in the regular routine, and said that to finance the project would call for an additional $54,500. This testimony does not seem to be disputed. Outside of some payments of ground

rent and $2 for a copy of the plans, plaintiff has put no money in the project.

The fee of $21,000 to Louis Kamper was disallowed in the circuit.   No appeal was taken by Louis Kamper. We therefore affirm the disallowance.   This leaves the contract cost of the building at the sum of $385,000.

The decree in the circuit found the amount due and afforded plaintiff opportunity to pay.

The decree in the circuit is affirmed, with costs to defendants.   The decree in this court will grant plaintiff thirty days in which to save his rights in accordance with the decree in the circuit.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, CLARK, and MCDONALD, JJ., concurred.